## INHABITANTS OF SPRINGFIELD *vs.* INHABITANTS OF WORCESTER.

Where a town incurs expenses, under the provisions of the act of 1837, *c.* 244, § 1, on account of paupers having a legal settlement in another town, the former is bound to give reasonable notice to the latter, before commencing an action for such expenses, and the selectmen of the respective towns are proper officers to give and to receive such notice.

On the 5th of May, 1846, a poor person, having a legal settlement in W., fell ill of the small pox in S., and was there relieved in pursuance of the provisions of the act of 1837, *c.* 244, § 1, and the selectmen of S., on the 25th of the same month, gave notice of the pauper's sickness and of the expenses incurred on his account, to the selectmen of W.; it was held, that such notice was reasonable and suf ficient.

Where an action is tried, a verdict rendered therein, and questions of law reserved on the report of the judge before whom the trial takes place; and afterwards a statute on which the action is founded is repealed; the court is bound to take judicial notice of the repealing statute, although it does not make a part of the case as reported.

The words, "motion for a new trial," in the act of 1842, *c.* 89, § 2, are not there used in a strict technical sense; but are intended to include all cases, which are continued, on the motion of a dissatisfied party, with a view to obtain some new disposition thereof, in order to relieve himself from a verdict.

Where an action was brought upon a statute, which was afterwards repealed; but, before the repealing statute went into operation, the action was tried and a verdict rendered for the plaintiff, and questions of law were reserved, which, after the repeal took effect, were decided in favor of the plaintiff, the court ordered judg‑ ment to be entered on the verdict, as of a day previous to the going into operation of the repealing act.

THIS was an action to recover the amount of expenses incurred by the plaintiffs for the support, nursing, and medi‑

cal treatment of James E. Belden, a poor person, who was alleged by the plaintiffs to be an inhabitant of and to have a settlement in the town of Worcester.

The writ was dated May 19th, 1847, and contained three counts : 1st, on the Rev. Sts. *c.* 46, § 13, to recover the expenses of supporting Belden as an ordinary pauper ; 2d, on an alleged implied obligation, on the part of the defendants, to defray the expenses of Belden's support ; and 3d, on the act of 1837, *c.* 244, § 1, for the recovery of expenses incurred by the plaintiffs in consequence of Belden's being sick of the small pox in the town of Springfield. On the trial, which took place in this court before *Dewey,* J., on the 8th of May, 1848, the following facts appeared in evidence, or were admitted by the parties.

On the 5th of May, 1846, Belden, being then an inhabitant of the town of Worcester, and legally chargeable thereto as a pauper, was infected and sick with the small pox in the town of Springfield, and was there provided by the board of health of that town with nurses, medical attendance, a hospital, and other necessaries. Belden remained sick for some time, and the plaintiffs expended in his support and cure the sum of $355·01, which he was wholly unable to pay.

The following notice was sent, on the day of its date, by the selectmen of Springfield to the selectmen of Worcester : —

"Springfield, May 25th, 1846.

"Gentlemen : James E. Belden, a colored man, came here, not far from the 1st of this month, diseased with the small pox.

"The expenses of his sickness have been borne by this town ; the man himself having no means of paying them. According to the information we have, the town of Worcester is liable for these expenses.

"We have therefore thought it our duty (although not legally obliged so to do) to notify you of the case, that you may take such measures, in regard to it, as you may deem proper. We are told that Henry W. Miller, of your place, is well acquainted with Belden.

"The physicians, who have had charge of the case, state that their patient will probably recover. His disease has been the worst form of small pox.

"In behalf of the selectmen of Springfield,

"HENRY MORRIS, Chairman.

"To the Selectmen of Worcester."

5 *

This notice was received by the selectmen of Worcester, and, on the 22d of June, 1846, the chairman of the overseers of the poor of Worcester went to Springfield, and called upon some of the officers of that town, in relation to the subject of Belden's sickness. He denied that Belden had a legal settlement in Worcester, and said that the notice, which was sent to the town of Worcester, was not in the proper form; but he offered, nevertheless, to pay the town of Springfield one dollar a week towards the expenses of Belden's support. The towns of Springfield and Worcester had both of them regularly organized boards of overseers of the poor during the year 1846.

The jury found, upon the evidence submitted to them, that Belden's settlement was in Worcester, and that the plaintiffs were entitled to recover the sum of $355·01, and rendered their verdict accordingly.

If, in the opinion of the court, the notice was sufficient, under the Rev. Sts. *c.* 46, § 13, or under the act of 1837, *c.* 244, § 1; or, if, under that act, no notice was necessary; then judgment is to be rendered on the verdict, with interest from such time as the court may direct. But if, in the opinion of the court, the notice was insufficient, and the defendants are entitled to object thereto, then the plaintiffs are to become nonsuit.

*R. Newton,* for the defendants.

1. The plaintiffs cannot recover upon the first count, because the notice should have been given by the overseers of Springfield to the overseers of Worcester (*Ashby* v. *Lunenburg,* 8 Pick. 563); nor upon the third, because towns are under no other legal obligation for the support of paupers than that created by statute.

They can only recover upon the second count, on the ground that the statutes relating to the small pox and other dangerous diseases were intended to create a new and distinct system of providing for and recovering the expenses of paupers sick of such diseases. But this, the defendants contend, is not the case. The general purpose of these statutes is to

protect the public against nuisances; but the expenses incidentally incurred under them by towns, in relation to paupers, are put upon the footing of other expenses for paupers, and are to be borne by the towns chargeable with their support. The language of the act of 1837, *c.* 244, § 1, — " the town to which he belongs," — is synonymous with the term " settlement," and is so used in the acts of 7 Geo. 3 (Anc. C. & L. 664), 1793, *c.* 59, § 2, and 1797, *c.* 16, § 9.

It can hardly be supposed, that the legislature intended to withdraw from the overseers all power relative to paupers, for whom expenses are incurred within the statute of 1837. In those cases, where the expenses incurred are for paupers belonging to other towns, there is as much reason, as in other cases, for requiring notice to be given to the town chargeable; but, if the notice is not to be given by the overseers, under the general law relative to the support of paupers, there is no law whatever requiring such notice.

If the board of health personally incur expenses under the statute of 1837, they may render their accounts therefor to the overseers, in the same manner as individuals in other cases; and proceedings may then be instituted by the overseers under the provisions of the Rev. Sts. *c.* 46, § 13.

2. Another objection to the plaintiff's right to recover is, that so much of the act of 1837, *c.* 244, as relates to the small pox has been repealed by the act of 1848, *c.* 119, which went into operation on the 18th of May, 1848. This objection was not taken at the trial, or reserved for the consideration of the court, for the reason, that the passing of the repealing act was not then known; but the court now have judicial knowledge of its existence, and they cannot render a judgment upon a statute, which they know has been repealed, without a saving of pending proceedings. *Comm'th* v. *Marshall*, 11 Pick. 350; *Comm'th* v. *Kimball*, 21 Pick. 373; *Miller's Case*, 1 W. Bl. 451; *Butler* v. *Palmer*, 1 Hill, 324; *Hatfield* v. *Montgomery*, 4 Yeates, 392.

It cannot be objected, that the repealing act impairs the obligation of a contract; for there was no contract, nor even

a moral obligation, on the part of the defendants, but only a statute obligation, which may be dissolved by a statute. The repealing act is within the power of the legislature to pass. *Brown* v. *Penobscot Bank,* 8 Mass. 445 ; *Comm'th* v. *Bird,* 12 Mass. 443. And where a statute is passed, without a saving clause, during the pendency of a suit, it is to have the same construction and effect, as if passed before the suit is brought. *Bacon* v. *Callender,* 6 Mass. 303 ; *Reed* v. *Fullum,* 2 Pick. 158 ; *Holyoke* v. *Haskins,* 9 Pick. 259.

*H. Vose,* for the plaintiffs.

1. The plaintiffs are entitled to recover, either under the Rev. Sts. *c.* 46, § 13, or under the act of 1837, *c.* 244, § 1. Assuming the former as the ground of their claim, it is not pretended that the notice was sufficient, in point of form ; but the defendants, by their subsequent conduct, in acting upon it, have waived all formal defects ; and it is well settled, that defective notices, in cases of this kind, are cured by the conduct and answer of the party to be charged. *Embden* v. *Augusta,* 12 Mass. 307 ; *Shutesbury* v. *Oxford,* 16 Mass. 102 ; *Orange* v. *Sudbury,* 10 Pick. 22.

The act of 1837 does not, in terms, require any notice, nor is any notice necessary under the statute. The purpose of notice, in ordinary cases, is, to enable the town liable for the pauper's support to remove him. But this cannot apply to the case of a pauper, who is sick of the small pox, or other dangerous disease, and consequently cannot be removed. *Worcester* v. *Milford,* 18 Pick. 379, 382. If, however, it should be held, that notice is necessary under the act of 1837, no other than reasonable notice can be required, and such notice was given in the present case.

Paupers, for whom expenses are incurred under the act of 1837, stand upon a different footing from ordinary paupers, and are placed under the exclusive control of an entirely different board of municipal officers. The language of the statute, — " town to which he belongs," — is to be taken in its ordinary acceptation of place of residence, rather than in the more technical signification of " legal settlement."

2. The defendants further object, that the plaintiffs cannot have judgment, because the act of 1837, c. 244, so far as it relates to the small pox, has, since the verdict was rendered, been repealed without any saving of pending actions. This objection does not seem to be open to them on this report; but, if it be, it ought not to prevail for several reasons.

The cases of the *Comm'th* v. *Marshall*, and *Comm'th* v. *Kimball*, which were relied on for the defendants, being criminal proceedings, and governed by peculiar principles, are not applicable.

To construe the repealing act so as to deprive the plaintiffs of their judgment, would be to give it a retrospective operation; the plaintiffs having already acquired a vested right to a remuneration for their expenses. *Belfast* v. *Leominster*, 1 Pick. 123. A statute is retrospective in its operation, which annuls any legal ground or right, on which a pending action is founded. *Woart* v. *Winnick*, 3 N. H. 473; *Dow* v. *Norris*, 4 N. H. 16. And it is a settled rule of construction, that a legislative act is not to have a retrospective operation, unless such construction be distinctly required by its terms, or be necessary to give it any efficiency. *Thames Man. Co.* v. *Lathrop*, 7 Conn. 550; *Perkins* v. *Perkins*, 7 Conn. 558.

In the case of *Couch* v. *Jeffries*, 4 Bur. 2460, it was laid down by lord Mansfield, that it was not to be imagined, that the legislature could, by general words, mean to take away a vested right from the person in whom it had legally vested. In *Miller's Case*, 1 W. Bl. 451, and in the case of *Springfield* v. *Hampden*, 6 Pick. 501, which are apparently strong cases for the defendants, the tribunal, before which the pending proceedings were instituted, was either abolished, or deprived in express terms of the power to complete the proceedings, without any saving clause. In the cases of *Brown* v. *Penobscot Bank*, and of *Reed* v. *Fullum*, the several statutes in question were adjudged not to be retrospective in their operation; and, in the case of the *Comm'th* v. *Bird*, a retrospective operation was plainly required by the terms of the act.

Lastly, this action is brought on the implied promise of the

defendants, growing out of a statute obligation, and is in the usual form of actions for the recovery of the expenses of supporting a pauper. 1 Steph. N. P. 233 ; *Bath* v. *Freeport*, 5 Mass. 325. Implied as well as express contracts are within the prohibition of the constitution of the United States. Story on Const. §§ 1371, 1372. If, therefore, the repealing act applies to this case, it is, *pro tanto*, unconstitutional.

*Newton*, in reply. The conduct of the defendants cannot be considered as a waiver of objections to the notice ; for the letter was in fact no notice. It might as well have been sent by and to the surveyors of highways or constables. But, further, the defendants expressly made the objection, and therefore cannot be said to have waived it. In all the cases, cited for the plaintiffs, as to this point, the notices were answered or acted upon, without any allusion to their informality.

There are other reasons, besides the removal of a pauper, for requiring notice to be given. One is, that the town in which the pauper has his settlement, may have an opportunity to pay the expenses incurred, without a suit, if they think proper ; and this reason applies quite as strongly to cases occurring under the act of 1837, as to those arising under the general pauper laws.

The counsel for the plaintiffs has attempted to show, that the repeal of the act of 1837 impaired the obligation of a contract ; but, if so, the case of the *Comm'th* v. *Bird* was improperly decided ; and, besides, the word " contract," in the constitutional restriction, is used in its common acceptation, and not in any technical sense, in which alone it can apply to the obligation of the plaintiffs in the present case.

The language of the legislature, in the repealing act, being plain and unequivocal, there can be no doubt as to their intention to provide, that the act of 1837, so far as it relates to the small pox, shall have no further effect ; and it may be inferred, that no reservation of pending suits was intended, from the fact, that the common and usual saving clause to that effect is not contained in the act.

The opinion of the court was delivered at the May term, 1849, in Hampden, by

METCALF, J. The statute of 1837, *c.* 244, on which this action is founded, provides " that whenever any person coming from abroad, or residing in any town in this state, shall be infected with the plague, small pox, or other sickness dangerous to the public health, the board of health of such town shall make effectual provision, in the manner which they shall judge best for the safety of the inhabitants, by removing such sick or infected person to a separate house, or otherwise, and by providing nurses, and other assistance and necessaries, which shall all be at the charge of the person himself, if able ; otherwise, at the charge of the town to which he belongs." As no provision is made, in this statute, for notice to the town to which the infected person belongs, in order to render such town liable to an action to recover the expenses incurred by furnishing him with assistance and necessaries, the first question in this case is, whether the law required any notice to be given by the plaintiffs to the defendants, before the commencement of the action. On this point we have no doubt. In the action of assumpsit, it is a settled general rule, (as expressed in some of the books,) that when a matter is secret to the plaintiff, and such whereof the defendant cannot take notice without being informed by the plaintiff, or lies more properly in the knowledge of the plaintiff than of the defendant, whether it be a condition precedent, on which the performance of the defendant's promise is altogether to depend, or it be only to regulate the extent to which it is to be performed, the plaintiff must cause such notice to be given to the defendant, before he can bring an action against him for not performing his promise. The case at bar clearly falls within this old and just rule ; and therefore we have only to decide whether the plaintiffs, before commencing their action, gave to the defendants such notice as the law requires.

It has been argued for the defendants, that they were entitled to a notice to their overseers of the poor, from the

overseers of the poor of Springfield, according to the provision of the Rev. Sts. c. 46, relating to paupers generally. But the legislature have not so directed, nor does the reason of the case so require. The care of a pauper, in ordinary cases, is given, by Rev. Sts. c. 46, to the overseers of the poor of the town where he falls into distress; and they are manifestly the proper persons to give notice to the overseers of the poor of the town where he has his settlement, who are, as manifestly, the proper persons to receive and attend to the notice. One purpose of such notice is to enable the town, which is liable for such pauper's support, to remove him to that town and support him there. But in the case at bar, the care of the infected person was given, by *St.* 1837, c. 244, to the board of health. The overseers of the poor had, by law, nothing to do with him or for him; and in the absence of any statute provision, we see no reason why they, rather than any other town officers, should have given notice to the defendants, nor why the notice should have been given to the overseers of the poor of the town of Worcester, who could not have removed such person and supported him in that town.

The remaining question is, whether the notice, which the defendants received, was sufficient to charge them. When no specific form of notice is prescribed by law, reasonable notice is all that is necessary. In the present case, the notice was in due season, and was full and clear in its terms. It was given by the selectmen of Springfield to the selectmen of Worcester. This, in the opinion of the court, was a reasonable notice. Selectmen have the general oversight of all town affairs which are not specially confided to other town officers. They supervise the disbursement of the town's money, and are, generally, the organs of communication between one town and another, and between towns and individuals. We know of no more proper mode of giving notice, which the plaintiffs could have adopted. It seems to us to be all that was required by law or by comity.

The plaintiffs are therefore entitled to judgment on the

verdict, unless they are defeated by matter arising since the trial, and not appearing on the judge's report.

By *St.* 1848, *c.* 119, which has been cited by the defendants' counsel, and of which we are bound to take notice, so much of *St.* 1837, *c.* 244, as relates to the small pox, was repealed, without any saving clause to prevent the repeal from operating on this action. This repealing act was passed on the 18th of April, 1848, before this cause was tried, and the repeal took effect on the 18th of May following, which was, as appears by the clerk's docket, ten days after the verdict was returned. It is thereupon insisted, that if the other objections to the plaintiffs' recovery are overruled, yet no judgment can be rendered on the verdict; because the action can be maintained only on the statute of 1837, under which no further proceedings can be had.

The general rule, as to the effect of the repeal of a statute, on unfinished proceedings under it, when no saving clause is inserted in the repealing act, is admitted by the counsel for the plaintiffs; but he denies that the terms of *St.* 1848, *c.* 119, are such as to affect this action, and also denies the power of the legislature to defeat the plaintiffs' recovery, by any terms of repeal which they might be pleased to use. These questions have been well argued; but we have not found it necessary to decide them. For by *St.* 1842, *c.* 89, § 2, "whenever any motion for a new trial shall be overruled, the court shall render judgment as of the term when the verdict was rendered, whenever it shall be necessary or expedient so to do, in order to secure the rights of the prevailing party, or prevent any loss by reason of the death of either party, *or otherwise.*" We do not understand the words, "motion for a new trial," to be here used in their technical sense. Such a construction would defeat the intention of the legislature, in half the cases for which they evidently meant to provide. We therefore construe the words, according to the spirit and purview of the statute, so that it may effect its manifest design, by enabling the court to enter judgment *nunc pro tunc,*

Springfield *v.* Worcester.

whenever a case is continued, on motion of a dissatisfied party, for the purpose of his obtaining some new disposition thereof, which shall relieve him from a verdict.

But if the statute of 1842 were not applicable to the present case, we are of opinion that the common law authorizes us to enter judgment as of the term when the verdict was rendered. When an action, which would fail by the death of either party before judgment, is continued for argument or advisement, whether there has been a verdict, demurrer, or agreed statement of facts, and one of the parties afterwards dies, it is the common course of the court, in order to prevent injustice, to enter judgment as of a former term. Bingham on Judgments, 95, 96; *Key* v. *Goodwin,* 1 Moore & Scott, 620; *Ryghtmyre* v. *Durham,* 12 Wend. 245; *Perry* v. *Wilson,* 7 Mass. 395. And the death of a party is not the only cause for such an entry of judgment. In *Mara* v. *Quin,* 6 T. R. 1, it was held, that a plaintiff who had sued out a *scire facias* against an executor, on a judgment that was entered in 1793, might amend the judgment, by entering it as of a term in 1791, and might also amend his *scire facias* conformably, for the purpose of reaching the assets of the testator, which the executor might otherwise retain in his hands; unless the executor could show that some injustice would thereby be done. "The forms of the court," said lord Kenyon, "are always best used when they are made subservient to the justice of the case." See also *Gregory* v. *Haughton,* 1 Dev. 442.

Judgment is to be entered as of the last day of May term, 1848, which was the tenth day of that month.